UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEOFFREY D. WILLIAMS, <br><br> Plaintiff, <br><br> - against - <br><br> UNITED STATES INFORMATION SYSTEMS, INC., LAURA G. WEISS, individually and in her capacity as Counsel, BRIAN H. LEVINE, individually and in his capacity as supervisor, and RAMONE ARIAS, individually and in his capacity as Proprietor of Arias Landscaping Corp., <br><br> Defendants. | **OPINION AND ORDER** <br><br> 11 Civ. 7471 (ER) |

Appearances:

Geoffrey D. Williams,
Livingston Manor, New York
*Plaintiff, Pro se*

Brian K. Condon, Esq.
Condon & Associates PLLC
Nanuet, New York
*Attorney for Defendant, Ramone Arias*

Ramos, D.J.:

    Plaintiff Geoffrey D. Williams ("Williams" or "Plaintiff") commenced this *pro se* action on October 20, 2011, against Defendants United States Information Systems, Inc. ("USIS"), Laura G. Weiss ("Weiss"), individually and in her capacity as Counsel for USIS, Brian H. Levine ("Levine"), individually and in his capacity as supervisor, and Ramone Arias ("Arias"), individually and in his capacity as Proprietor of Arias Landscaping Corp. (collectively, the "Defendants"). Doc. 2. Arias now brings this Motion to Dismiss the Complaint as against him in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. 26. As relevant to the

1

instant motion,[1] the Complaint alleges that the Defendants constructively discharged Plaintiff from his employment at USIS because of his race and in retaliation for Plaintiff's refusal to participate in Defendants' illegal activities, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII").  Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages.  For the reasons set forth below, Arias' motion to dismiss is GRANTED.

**I. Factual Background**

The following facts have been taken from the allegations in the Complaint, which the Court accepts as true for purposes of this motion.  *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010).[2]

At all times relevant to the Complaint, Plaintiff Geoffrey D. Williams, an African-American adult male, was employed by Defendant USIS.  Compl. ¶ 2.   He was first hired by USIS in April 2000, and began working under the supervision of Defendant Levine, another USIS employee, in approximately May 2001.  *Id*. ¶¶ 5, 18, 20.  Between June 2002 and the date of his resignation in May 2009, Plaintiff was the only African-American employee performing duties at USIS and the homes of the company's officers under the supervision of Defendant Levine.  *Id*. ¶ 26.   According to Plaintiff, "[a]t all relevant times, all matters regarding

---

[1] While the Complaint contains five different Causes of Action, Compl. ¶¶ 59-97, Defendant Arias is named only in the Second Cause of Action, which alleges "Retaliation and Disparate Impact," *id.* ¶¶ 67-83, and the Fifth Cause of Action, which alleges "Constructive Discharge."  *Id.* ¶¶ 91-97.

[2] Plaintiff has filed a proposed Amended Complaint which, *inter alia*, contains additional facts concerning Arias. Doc. 73.   Specifically, the proposed Amended Complaint makes reference to an e-mail purportedly sent through an "intermediary" in which Arias allegedly accused Plaintiff of demanding money from him in order to "jeopardize Plaintiff's job."  *Id*. ¶ 95.  In addition, on one occasion, Arias is alleged to have "ordered his employees to leave a worksite early knowing it would create a difficult and untenable hardship for Plaintiff."  *Id.*  Even assuming the foregoing to be true, for the reasons set forth herein Plaintiff is still unable to state a viable Title VII claim against Arias.

compensation, terms, conditions, rights and privileges of Plaintiff's employment were governed and controlled by Defendant [USIS]." *Id*. ¶ 14. Plaintiff avers upon information and belief that Arias "was an agent of Arias Landscaping, Inc.," an entity that did business with USIS as a subcontractor. *Id*. ¶¶ 1, 16.

Plaintiff alleges that beginning in June 2001, shortly after he began working under the supervision of Levine, he was made aware of a practice of utilizing "illegal" day laborers to perform tasks at USIS. *Id*. ¶¶ 23-25, 27. When he questioned the practice, Plaintiff was told by Levine that the use of the illegal workers was known to, and had been approved by, USIS officials. *Id*. ¶ 23. Beginning in June 2002, Levine assigned Plaintiff the responsibility of picking up the workers. *Id*. ¶¶ 24, 25. When Plaintiff complained about being made to pick up the day laborers and work with them, Levine coerced and intimidated him by making it clear that Plaintiff "had two choices, comply and receive more overtime, or look for another job." *Id*. ¶ 25. According to Plaintiff, he was the only USIS employee that was required to pick up the day laborers and supervise them. *Id.* ¶ 27.

Between December 2004 and August 2006, the use of illegal workers became an "everyday" practice at USIS, and had been formalized as a result of the "unified facilitations" of the Defendants. *Id*. ¶ 28. Specifically, at a certain point, rather than pick up day laborers, USIS entered into an agreement with Defendant Arias whereby Arias' company, Arias Landscaping, Inc., provided workers on a daily basis. *Id.* Plaintiff alleges upon information and belief that between 2005 and 2009 the majority of workers provided by Arias were "undocumented aliens or illegal workers." *Id*. ¶ 29. At some point between January 2007 and November 2008, Levine is also alleged to have sent an e-mail to Plaintiff falsely accusing him of "strong arming" Arias. *Id*. ¶ 42. The e-mail was said to be based on statements made by Arias to company officers. *Id.*

In October 2008, USIS laid off twenty of its own employees, but continued the use of the illegal workers supplied by Arias. *Id*. ¶ 32. Plaintiff complained to Levine that he believed the practice of using illegal workers to do the work of laid off "American" workers to be "reprehensible." *Id*. ¶ 33. After making his complaint, Levine began to reduce Plaintiff's opportunities to work overtime, and assigned Plaintiff more physically challenging work, despite his knowledge that Plaintiff suffered from a heart condition. *Id*. ¶ 37.

Two months later, in December 2008, Levine instructed Plaintiff to clean up a mess that had been created by a white co-worker, Phil Hood ("Hood"), in retaliation for refusing to use Arias' illegal workers at an out of state work site. *Id*. ¶ 38. Plaintiff refused to clean up after Hood, igniting an incident during which Levine and Hood "harassed and harangued" Plaintiff. *Id.* After this incident, in addition to reducing Plaintiff's ability to work overtime, Levine began to shift many of Plaintiff's duties to Hood, an employee with less seniority and fewer construction skills than Plaintiff. *Id*. ¶ 39.

The pattern of retaliatory tactics continued from January to May 2009. *Id.* ¶ 40. During this five month period, Levine continued to assign Plaintiff the "worst" jobs, and provided him with too few of Arias' illegal workers to carry out the assignments. *Id*. ¶ 40. Levine also began excluding Plaintiff from supervisory meetings to which he had previously been invited. *Id*. ¶ 41. If Plaintiff complained, Levine taunted him by saying "if Plaintiff didn't like it he could find another job." *Id*. ¶ 40.

By May 2009, the situation had escalated into a constant condition of hostility wherein Plaintiff encountered racial and personal insults from co-workers,[3] and resistance and abuse from Arias' employees assigned to work with him by his supervisor, Defendant Levine. *Id.* ¶ 43.

---

[3] At no point in the Complaint does Plaintiff detail the substance of any such insults.

Plaintiff described two specific incidents in early May 2009. *Id.* ¶¶ 50-51. First, on May 6, 2009, Plaintiff was supervising a project at a company site. *Id.* ¶ 50. He was provided with six or seven illegal workers supplied by Arias' company. *Id.* ¶ 50. The workers started to leave near the end of the day but before the job had been completed, and Plaintiff inquired as to why they were leaving. *Id.* When told that they had been instructed to leave, Plaintiff called Levine who confirmed that he had instructed the workers to leave and that he, Plaintiff, should complete the job himself. *Id.* Plaintiff objected, saying that "this situation of using illegal workers was out of control and something should be done about it." *Id.* Levine responded that Plaintiff could "resign if he didn't like the conditions of his employment," and that this was the way things were going to be going forward. *Id.*

The next day, May 7, 2009, Plaintiff went to the home of a USIS officer where there was an ongoing construction project. *Id.* ¶ 51. Plaintiff anticipated that he would be performing his usual tasks there—operating heavy equipment or supervising the work. *Id.* However, when he arrived, Levine told him that he was not needed, despite the fact that it was obviously a very active work site. *Id.* In addition, he observed Arias' illegal workers operating the machinery that Plaintiff usually operated, which they were normally forbidden to do. *Id.* Levine was emphatic that he had no work for Plaintiff, telling him that he "had a big mouth and should look for another job[,] and that he would take away Plaintiff's company vehicle, company phone and gas credit card and make his life hell." *Id.* Plaintiff responded that "this was the last straw," and that he would report Levine's retaliatory actions to the company's senior supervising officer, Michael Wedlick ("Wedlick"). *Id.*

Plaintiff met with Wedlick that same day. *Id.* He told Wedlick that Levine's actions and the continued use of Arias' illegal workers had created a very hostile work environment and was

5

affecting his physical and emotional wellbeing. *Id*. ¶ 52. Wedlick acknowledged that he was aware of the acrimonious history between Plaintiff and Levine, and advised him to keep his "mouth shut" concerning the use of the illegal workers because the decision to use them had been made by Levine and the president of the company, Robert Lagana ("Lagana"). *Id*. Plaintiff then asked Wedlick to arrange a meeting between Plaintiff and Lagana. *Id*.

Over the course of the next week, between May 7 and May 13, 2009, Plaintiff did not hear from anyone at USIS, despite his repeated calls to Levine to clarify his work status. *Id*. ¶ 53. On May 13, Wedlick called Plaintiff informing him that Lagana had agreed to meet with him that day. *Id*. ¶ 54. Plaintiff met with Lagana for two hours. *Id.* ¶ 55. He advised Lagana about the hostile work environment that had been created by Levine and Arias and the continued use of illegal workers. *Id*. ¶ 55. Plaintiff requested that Lagana transfer him to another part of the company in a position with equal pay and authority. *Id*. However, the only option Lagana offered Plaintiff was to work under the supervision of another individual who was equally hostile towards Plaintiff as Levine. *Id*. Faced with this Hobson's choice, Plaintiff elected to separate from the company on May 14, 2009. *Id*. ¶ 56.

He filed the instant lawsuit on October 20, 2011, after receiving a "Right to Sue Letter" from the Equal Employment Opportunity Commission on July 24, 2011. *Id*. ¶ 12.

## II. Legal Standard for Rule 12(b)(6) Motions to Dismiss

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Famous Horse Inc.,* 624 F.3d at 108. However, the court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 680.

The question on a Rule 12(b)(6) motion "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, No. 10 Civ. 2940 (RWS), --- F. Supp. 2d ----, 2012 WL 4328329, at *15 (S.D.N.Y. Sept. 21, 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)).  "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits,'" and without regard for the weight of the evidence that might be offered in support of Plaintiff's claims. *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)).

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), a district court generally must confine itself to the four corners of the complaint and look only to the allegations contained therein. *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).  However, the Court remains obligated to construe a *pro se* complaint liberally, *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011), and to interpret a pro se plaintiff's claims as raising the strongest arguments that they suggest. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).  In order to

7

survive a motion to dismiss, a *pro se* plaintiff's pleadings still must contain "more than an unadorned, the-defendant-unlawfully-harmed me accusation." *Iqbal*, 556 U.S. at 678. A complaint that "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks and brackets omitted); *see also Triestman*, 470 F.3d at 477 ("[P]ro se status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'") (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

### III. Discussion

Assuming, as the Court must, that all of the allegations in the Complaint are true, and drawing all reasonable inferences in Plaintiff's favor, it is clear that Arias cannot be held liable to Plaintiff under Title VII. Simply stated, Plaintiff does not allege, and cannot establish, that Arias was ever his employer or his supervisor.[4] According to the Complaint, at all relevant times, Plaintiff was employed by Defendant USIS, Compl. ¶ 2, and "all matters regarding compensation, terms, conditions, rights and privileges of Plaintiff's employment *were governed and controlled by Defendant* [*USIS*]." *Id.* ¶ 14 (emphasis added). Plaintiff specifically alleges that between June 2002 and the date of his resignation in May 2009, he performed his duties at

---

[4] Plaintiff does argue in his Memorandum of Law in Opposition to Defendant Arias' Motion to Dismiss that Arias could be deemed to be an "employee" of USIS because he was "obligated to Defendant USIS on daily basis for a consecutive period of . . . years," and received a substantial amount of money from USIS during that time. Doc. 60 at 4, 5. In his Memorandum, Plaintiff also alleges that Arias attempted to impact his job and work environment through false accusations and by instructing his employees to give Plaintiff a "'hard time' on work sites and to be uncooperative." *Id.* at 5. However, the Court may not consider these allegations on a motion dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See, e.g.*, *Tomlins v. Vill. of Wappinger Falls Zoning Bd. of Appeals*, 812 F. Supp. 2d 357, 363 n.9 (S.D.N.Y. 2011) (explaining that the complaint may not be amended simply by raising new facts in opposition papers); *c.f. Scott v. City of New York Dep't of Corr.*, 641 F. Supp. 2d 211, 229 (S.D.N.Y. 2009) (explaining that it is inappropriate to consider claims not pleaded in complaint that are raised for the first time in opposition to summary judgment) (collecting cases), *aff'd*, 445 F. App'x 389 (2d Cir. 2011). Moreover, even if the Court were to consider the new factual allegations contained in his Memorandum, for the reasons set forth herein Plaintiff would still not have stated a viable Title VII claim against Arias.

USIS "under the supervision of . . . Levine," an employee of USIS. *Id.* ¶ 26.  Arias, on the other hand, was an agent of a separate corporate entity, Arias Landscaping, Inc., that did business with USIS as a subcontractor. *Id.* ¶¶ 1, 16.  These allegations are determinative of Plaintiff's cause of action against Arias.

It is beyond cavil that Title VII's protection extends only to employment relationships. *Tadros v. Coleman*, 717 F. Supp. 996, 1003 (S.D.N.Y. 1989); *Washington v. U.S. Tennis Ass'n*, 99 Civ. 5148 (JG), 2002 WL 1732801, at *3 (E.D.N.Y. July 22, 2002).  Title VII provides, in relevant part:

> It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.
>
> . . .
>
> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. §§ 2000e-2(a)(1), 2000e-3(a).

As the statute's language makes clear, "Title VII is an *employment* law, available only to employees (or prospective employees) seeking redress for the unlawful employment practices of their employers." *Tadros,* 717 F.Supp. at 1003 (citing *Wheeler v. Main Hurdman*, 825 F.2d 257, 275-76 (10th Cir.), *cert. denied*, 484 U.S. 986 (1987); *Spirides v. Reinhardt*, 613 F.2d 826, 829-30 (D.C. Cir. 1979)) (emphasis in original).  Here, there was no employment relationship between Plaintiff and Arias.  Plaintiff was employed by USIS and it was USIS that controlled every relevant aspect of Plaintiff's employment.

Even if Arias were an employee of USIS, and even if he supervised Plaintiff, it is well-established in this Circuit that individuals are not subject to liability under Title VII. *Sassaman v. Gamache*, 566 F.3d 307, 315 (2d Cir. 2009); *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 221 (2d Cir.2004) (*quoting Wrighten v. Glowski,* 232 F.3d 119, 120 (2d Cir.2000)). It is for this reason that Plaintiff's argument that Arias could be construed as an "employee" of USIS—which the Court is not considering, *see supra* n.4—does not help Plaintiff.

While Plaintiff asserts that Arias contributed to the allegedly hostile work environment,[5] those allegations are insufficient to bring Arias within the ambit of Title VII's proscriptions. To the extent that they are based on the actions of the workers supplied by Arias, those actions cannot form the basis for Title VII violation. *Mack v. Otis Elevator Co.*, 326 F.3d 116, 123 (2d. Cir. 2003) ("Employers are not . . . vicariously liable for [a] hostile work environment created by a mere co-worker of the victim.").[6] Here, as Plaintiff concedes, he was the one that supervised the workers supplied by Arias. Indeed, it is a significant component of the Complaint that USIS created a hostile work environment in part because it compelled Plaintiff to supervise the illegal workers supplied by Arias. *See, e.g.*, Compl. ¶¶ 1, 40, 50, 51. Thus, the individuals provided by Arias Landscaping, illegal or not, cannot be classified as anything more than "mere co-workers," and their actions cannot form the basis of a Title VII violation. *Mack*, 326 F.3d at 123.

To the extent Plaintiff's allegations are based on actions taken personally by Arias, the theory also fails. Even if he were Plaintiff's supervisor, as noted above, Second Circuit

---

[5] *See, e.g.*, Compl. ¶ 95 ("[I]n the pursuit of personal enrichment [Arias] either directed individuals under his employ to commit discriminatory and retaliatory acts against Plaintiff or he himself committed such acts upon Plaintiff.).

[6] It is for this reason that Plaintiff's new allegations contained in his proposed Amended Complaint—which the Court is not considering, *see supra* n.2—do not help Plaintiff. Even if the Arias Landscaping employees utilized by USIS could be deemed to be employees of USIS, their actions, as a mere co-workers of Plaintiff, cannot subject Arias to liability.

precedent bars Title VII actions against individual defendants with supervisory control over a plaintiff. *Sassaman*, 566 F.3d at 315.

## IV. Conclusion

For the reasons set forth above, Defendant Arias' motion to dismiss is GRANTED. The Clerk of the Court is respectfully directed to terminate Ramone Arias as a defendant in this case, and to terminate the pending motion, Doc. 26.

SO ORDERED.

Dated:   January 17, 2013
         White Plains, New York

                                                  Edgardo Ramos, U.S.D.J.